**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PLUMBERS' PENSION FUND, LOCAL 130, U.A., *et al.*, ) | | |
| ) | Case No.: 24 CV 6849 | |
| Plaintiffs, ) | | |
| ) | Judge: Durkin | |
| v. ) | | |
| ) | Magistrate: Jantz | |
| CALDWELL PLUMBING, INC., an Illinois corporation, ) | | |
| and ERIE INSURANCE CO., a Pennsylvania corporation, ) | | |
| ) | | |
| Defendants. ) | | |

### *PLAINTIFFS' OPPOSED MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST DEFENDANT CALDWELL PLUMBING, INC., UNDER F.R.C.P. 12(c)*

Plaintiffs, the PLUMBERS' PENSION FUND, LOCAL 130, U.A., *et al.*, by their attorneys, move for judgment on the pleadings, under Federal Rule of Civil Procedure 12(c) against CALDWELL PLUMBING, INC. ("CALDWELL"), on Count One of their Complaint, stating as follows:

1. Plaintiffs filed their Complaint on August 5, 2024.

2. Plaintiffs served Defendant CALDWELL on August 20, 2024.

3. CALDWELL's December 5, 2024 Answer to the Complaint stated the following:

> 14.    CALDWELL signed a Memorandum of Agreement with LOCAL 130 binding it to the LOCAL 130 CBA on December 8, 1992, and never terminated its collective bargaining relationship with LOCAL 130.
>
> ANSWER:  Caldwell lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations and demands strict proof thereof.
>
> 15.    The Memorandum and CBA also bound CALDWELL to the provisions of the Declarations of Trust creating the FUNDS.

ANSWER: Caldwell lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations and demands strict proof thereof.

19. The LOCAL 130 CBA required CALDWELL to contribute to the FUNDS for each hour worked by its bargaining unit employees at the rate and in the manner specified in the CBA and Trust Agreements.

ANSWER: Caldwell lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations and demands strict proof thereof.

20. The CBA and Trust Agreements further required CALDWELL to submit its books and records to the FUNDS' auditor to determine whether it complied with its contribution obligations.

ANSWER: Caldwell lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations and demands strict proof thereof.

21. The CBA also created a Joint Arbitration Board ("JAB") between the Union and its signatory contractors to address CBA violations by signatory contractors, with the power to impose discipline including fines.

ANSWER: Caldwell lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations and demands strict proof thereof.

22. CALDWELL underwent an audit covering the period from July 2015 through December 2017 revealing arrearages to the Funds of $464,182.86 in contributions, plus CBA-mandated liquidated damages and interest.

ANSWER: Caldwell admits it underwent an audit for the referenced period. Caldwell lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations and demands strict proof thereof.

23. CALDWELL entered into a settlement agreement to address the preceding arrearages ("FUNDS Settlement"). Ex. A.

ANSWER: Caldwell admits it entered into the settlement agreement attached as Exhibit A and denies any allegations inconsistent therewith.

24.     The present outstanding balance under the repayment plan in the FUNDS' Settlement is $127,020.58.

ANSWER:     Caldwell lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations and demands strict proof thereof.

25.     On notification of its cessation of operations, the FUNDS conducted an exit audit of CALDWELL, revealing an additional arrearage of $116,119.96 in contributions and CBA- mandated liquidated damages and interest. Ex. B.

ANSWER: Caldwell lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations and demands strict proof thereof.

26.     On May 16, 2019, the JAB imposed $287,191.23 in fines on CALDWELL for various CBA violations.

ANSWER:     Caldwell admits the fines were imposed, but denies their validity.

27.     CALDWELL sought to address the fines through a settlement agreement ("JAB Settlement"). Ex. C.

ANSWER:     Caldwell admits it entered into the settlement agreement attached as Exhibit C and denies any allegations inconsistent therewith.

28.     The present outstanding balance under the repayment plan in the JAB Settlement is $102,500.00.

ANSWER:     Caldwell lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations and demands strict proof thereof.

33.     With its cessation of operations, CALDWELL defaulted under both its FUNDS Settlement and JAB Settlement.

ANSWER:     Caldwell lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations and demands strict proof thereof.

34.     CALDWELL has also made no payments toward its exit audit findings.

ANSWER:    Upon information and belief, Caldwell admits the allegations.

4.    "A party *** may not deny sufficient information or knowledge with impunity, but is subject to the requirements of honesty in pleading." *David v. Crompton & Knowles Corp*., 58 F.R.D. 444, 446 (E.D. Pa. 1973). "[A]n answer asserting want of knowledge sufficient to form a belief as to the truth of facts alleged in a complaint does not serve as a denial if the assertion of ignorance is obviously [a] sham. In such circumstances the facts alleged in the complaint stand admitted." *Am. Photocopy Equip. Co. v. Rovico, Inc.,* 359 F.2d 745, 747 (7th Cir. 1966), quoting *Harvey Aluminum (Incorporated) v. N.L.R.B.*, 335 F.2d 749, 758 (9th Cir. 1964). Accord *Ty Inc. v. Esquire Licensing, LLC*, 2019 U.S. Dist. LEXIS 240209, at *6 (N.D. Ill. Feb. 21, 2019); *Burress v. Buesing*, 2006 U.S. Dist. LEXIS 118700, at *7 (S.D. Ind. Dec. 27, 2018).

5.    An assertion of ignorance is a sham where the information contained in the offensive allegation must be known to or readily accessible to the responding party. *Rovico*, 359 F.2d at 746-47 ("this failure of plaintiff to frankly reply on a matter, which it, as patent owner and manufacturer must have had within its knowledge, exhibits a lack of fairness which completely discredits its statement that it is without knowledge of or information sufficient to form a belief as to the truth of said averment of defendant"); *Mesirow v. Duggan*, 240 F.2d 751, 756 (8th Cir. 1957) ("That was a matter of record in appellee's control and peculiarly within his knowledge, and, under the law and these circumstances, his answer, saying that he 'was without knowledge or information sufficient to form a belief' as to that matter, did not constitute a denial of the averments"); *Ice Plant Equip. Co. v. Martocello*, 43 F. Supp. 281, 282-83 (E.D. Pa. 1941) ("the rule [that a profession of ignorance constitutes a denial] does not apply if the fact as to which want of knowledge is asserted is to the knowledge of the Court so plainly and necessarily within the defendant's knowledge that his averment of ignorance must be palpably untrue. In such case the

4

resort to the formal denial is plainly in bad faith and for the mere purpose of delay"); *Maloney v. Alliance Collection Agencies, Inc.*, 2018 U.S. Dist. LEXIS 189649, at *20 (E.D. Wis. Nov. 6, 2018); 41 Am.Jur., §152, p. 399 (" 'The rule permitting denials on information and belief or for want of information and belief is subject to an exception in case of facts either actually or presumably within the knowledge of the defendant, or facts which are at hand and accessible and which it is the duty of the defendant to ascertain. Denials concerning such matters are very properly required to be in positive form, and, if merely on information and belief, they will be held frivolous, or treated as being an evasion").

6.     Here, CALDWELL professes ignorance over the existence of its collective bargaining relationship with Plumbers Local 130 and its audit and contribution obligations thereunder. (*Deft. Ans.* ¶¶14-15, 19-20).   Yet, CALDWELL admits to signing a settlement agreement, attached to the Complaint as Exhibit A, respecting a fringe benefit contributions audit covering from July 2015 through December 2017. (*Deft. Ans.* ¶¶22-23).   That settlement agreement provided "Caldwell has been signatory to, and bound by, a Collective Bargaining Agreement ('CBA') with the Chicago Journeymen Plumbers' Local Union 130, U.A. ('Union')." (*Pltffs' Compl.*, Ex. A).   The agreement states it settles a dispute between CALDWELL and the Funds over "the nonpayment of fringe benefit contributions and liquidated damages relating to a fringe benefit compliance audit," and provides for a series of payments by CALDWELL to the Funds toward its contribution compliance audit findings (*Id.*). "Caldwell agrees to stay current on its fringe benefit reporting obligations for the month of June 2019 forward during the term of this Agreement." (*Id.*).   Under the Labor Management Relations Act, an employer may not provide material support to a Union except through contribution to a labor-management jointly trusteed benefit fund, as provided for in a CBA.   29 U.S.C. §186(b),(c).

The agreement required CALDWELL to secure the amounts due thereunder with a bond that provided:

> [I]f said Principal shall well and faithfully pay the wages, expense allowances, savings plan contributions, DC plan contributions, required hourly dues or assessment deductions, Welfare Fund contributions, Pension Fund contributions, Apprentice Training Fund contributions, Industry Promotion Funds contributions, *and other financial obligations required by the Collective Bargaining Agreement due to be paid to or on behalf of any and all Union members or other employees working within the jurisdiction of the Union pursuant to the provisions of said Collective Bargaining Agreement* and in the employ of the Principal, then this obligation shall be void, otherwise the same shall remain in full force and effect. It is expressly understood and agreed that the Surety shall become obligated *to pay such amounts required by the Collective Bargaining Agreement* as are due and unpaid within fourteen (14) days of the receipt of notice with the Surety of the delinquency in payment of the above obligations by the Employer, herein referred to as the Principal. (*Pltffs' Compl.*, Ex. A) (emphases added).

Hence, CALDWELL must and does, in fact, know that it had a CBA with Local 130 under which it had to make specified contributions to the Funds on behalf of its employees. Caldwell's claims of ignorance on these subjects cannot be well taken, and must be deemed admissions.

Further, more specifically, CALDWELL must know, or at least after a cursory review of its own records would have known that it signed the specified Memorandum of Agreement with Local 130 that bound it to the CBA and the Funds' Trust Agreements. *Fed. R. Civ. Proc. 11, Adv. Cmte. Notes 1993 Ammends* ("At other times a denial is permissible because, *after an appropriate investigation*, a party has no information concerning the matter ***. **** The changes is subdivisions (b)(3) and (b)(4) will serve to equalize the burden of the rule upon plaintiffs and defendants, who under Rule 8(b) are in effect allowed to deny allegations by stating that *from their initial investigation* they lack sufficient information to form a belief as to the truth of the allegation") (Emphases added); *Exchange Nat'l Bank v. Brown*, 1985 U.S. Dist. LEXIS 16958, at

*6 (N.D. Ill. Aug. 9, 1985) ("Where the matter is one *** as to which the party can inform himself with the slightest effort, that party must perform a reasonable investigation to obtain the knowledge of such fact").

Nearly four months passed between service of the Complaint on CALDWELL and its Answer. Had CALDWELL undertook *any* investigation during that time, it would likely have found Plaintiffs' prior complaint against it in Northern District case number 18 CV 4798, containing that Memorandum as its Exhibit A. Further, it would have found its own admission that the Memorandum was "a true and accurate copy of the memorandum Agreement signed by the Corporate President of Caldwell Plumbing, Inc." *Plumbers Pension Fund, Local 130, et al. v. Caldwell Plumbing, Inc.*, 18 CV 4798 (N.D. Ill.) (Dkt. #36).[1] That CALDWELL continues to profess ignorance as to its binding to the Local 130 CBA and the Funds' Trust Agreements, after such ample time for investigation, suggests only bad faith evasion and delay.

7.     In a similar vein, CALDWELL professes ignorance of the Local 130 CBA creating a Joint Arbitration Board with the power to impose fines. (*Deft. Ans.* ¶21). Yet, CALDWELL, again, admits entering into a settlement agreement attached to the Complaint as Exhibt C. (*Id.* ¶27). That agreement plainly states that CALDWELL and Local 130 are entering "into a compromise where Caldwell will pay the aggregate sum of $250,000.00 to resolve the JAB Award," entered after "the Union presented various [CBA] violations before the Joint Arbitration Board." There is no non-admission of liability clause in the agreement. Moreover, the JAB Decision and Award itself, specifically referred to by the agreement, and attached here as Exhibit 1, "mailed to Caldwell," following the company's in-person participation in the JAB hearing by

_____

[1] The corporate president signing the Memorandum, Nick Tenerelli, remains Defendant's officer to this day. (Ex. 2 to this Motion).

7

its officers and its counsel, identified CALDWELL as bound to the Local 130 CBA, and set out

the CBA-bases for the JAB's jurisdiction over CALDWELL and its "power to issue appropriate

penalties or remedies including, without limitation, fines ***." Just as with the MOA, with even

a semblance of a reasonable pre-answer investigation of its own files, CALDWELL would have

discovered this document and have had to affirmatively admit paragraph 21 of the Complaint.

Finally, in any event, since it is patently clear that CALDWELL had a CBA with Local 130, " '

[i]t will not do for [it] to enter into a contract, and, when called upon to respond to its obligations,

to say that he did not read it when he signed it, or did not know what it contained.' [Citation.] The

'integrity of contracts demands' that this principle 'be rigidly enforced by the courts.' [Citation.]"

*Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3rd Cir. 2008). The way to enforce this

principle in this instance is to deem CALDWELL's bad faith claims of ignorance as admissions.

8.      As to both settlement agreements, CALDWELL professes ignorance as to whether

it defaulted, and whether Plaintiffs accurately set forth the balances due thereunder. (*Deft. Ans.*

¶¶24, 28, 33). But, as the debtor under those agreements, CALDWELL must know if it has been

timely paying its agreed installments, so as to avoid default. Further, the total balances due are set

forth in the agreements, and CALDWELL must know or be able to readily ascertain from its own

records what payments it made toward those balances.

9.      Finally, CALDWELL indicates ignorance as to whether it underwent an exit audit

and the arrearages determined thereunder, though it admits to making no payments toward the

audit findings. (*Deft. Ans.* ¶¶25, 34). A copy of the audit report was attached to the Complaint as

Exhibit B.  In the report, the auditor indicates she worked with CALDWELL's office

administrator, Jim Sliwa, to perform the audit. The auditor's calculations of the arrearages are

presented in the report for CALDWELL's present review and, if appropriate, affirmative denial.

Once more, based on the information presented in the Complaint and CALDWELL's own records, CALDWELL has the capacity to admit or deny the Funds' allegations, but, instead, buries its head in the sand. As condemned in *Rovico*, *Mesirow*, and *Ice Plant Equipment*, CALDWELL is simply not pleading honestly, incorrectly assuming its professed ignorance will delay the inevitable. It should not. CALDWELL's feigned ignorance should be disregarded and its answers of ignorance to the preceding Complaint paragraphs deemed admissions instead. When so treated, the Funds are entitled to judgment against CALDWELL on the pleadings.

10.     Under Federal Rule of Civil Procedure 12(c), the Court will grant the movant judgment when the pleadings, and matters of which the Court may take judicial notice, demonstrate no issues of material fact and the movant's entitlement to judgment as a matter of law. See *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). Both plaintiffs and defendants may seek judgments under Rule 12(c). See *American Franklin Life Ins. Co. v. Galati*, 776 F. Supp. 1054 (E.D. Pa. 1991) (granting a plaintiff's motion for judgment on the pleadings under Rule 12(c)).

11.     Here, CALDWELL admits it is in default on both of its settlement agreements (*Deft. Ans.* ¶¶33). It admits the balance due on the settlement for its prior audit is $127,020.58. (*Deft. Ans.* ¶¶24). It admits that the balance due on the settlement for its JAB findings is $102,500.00. (*Deft. Ans.* ¶¶28). CALDWELL admits its exit audit reveals it to be further in arrears to the Funds in the amount of $116,119.96, and that is has made no payments toward that arrearage. (*Deft. Ans.* ¶¶25, 34). These admissions are sufficient for the Funds to receive judgment as a matter of law.

WHEREFORE, Plaintiffs ask this Court to:

A.     DEEM Plaintiffs' specified allegations against CALDWELL, improperly responded to with claimed ignorance admitted.

B.      ENTER a money judgment against CALDWELL in the amount of $349,545.04.

C.      GRANT Plaintiffs such other and further relief as the Court deems just and equitable.

Respectfully submitted,
PLUMBERS' PENSION FUND, LOCAL 130, U.A., *et al.*

By:    /s/ Andrew S. Pigott
One of Plaintiffs' Attorneys

**Gregorio, Stec, Klein & Hosé**
2 N. LaSalle St., Suite 1650
Chicago, IL 60602
312/263-2343
apigott@gregoriolaw.com

# Exhibit 1

PLUMBING CONTRACTORS ASSOCIATION MIDWEST
PLUMBERS LOCAL UNION 130 U.A.
JOINT ARBITRATION BOARD

In the Matter of: )
)
Caldwell Plumbing Co., )
)
     Respondent, )
)   2019 JAB 01
  and )
)
Plumbers Local Union 130 U.A., )
)
)

## <u>DECISION AND AWARD</u>

On or about March 20, 2019, a "Notice of Joint Arbitration Board" ("Notice"), was sent via regular and certified mail to Caldwell Plumbing Co. ("Caldwell"). This Notice outlined the contract violations alleged to have been committed by Caldwell, herein referred to as the "Charges," and scheduled a hearing before the Joint Arbitration Board ("Board"). The hearing was originally scheduled for April 4, 2019 but re-scheduled at Caldwell's request notwithstanding the fact that the request was untimely under Section 3.5 of the collective bargaining agreement. The hearing was ultimately rescheduled for April 30, 2019. The case was called at the appointed time and place, and the Plumbers Local Union 130, U.A., ("Union"), and the Union's attorney, Grant Piechochinski, were present.

The Board has jurisdiction over these charges because: (1) Caldwell is a signatory contractor to the terms of the collective bargaining agreement effective June 1, 2017 through May 31, 2020 ("CBA") between the Plumbing Contractors Association Midwest ("PCA") and the Union, and (2) because Article III of the CBA gives the Board jurisdiction and authority over the parties' disputes addressed herein. Accordingly, this case is properly before the Board for disposition.

Pursuant to Article III, Section 3.6, of the CBA, the Board has the power to issue appropriate penalties or remedies including, without limitation, fines, or other appropriate sanctions. Article III, Section 3.5, of the CBA provides that a decision approved by a majority of the Board members is final and binding upon the parties to the CBA.

Pursuant to Article III of the CBA, the hearing in this case was held before the following Board representatives:

| CONTRACTOR | UNION |
|---|---|
| Mike Kerrigan | William Matthies |
| Todd DeFranco | Joseph Strong |
| Matt Erickson | Patrick McCarthy |
| John Baethke | Ken Turnquist |

Thomas Gavin acted as Secretary of the Board. Also present as counsel for the PCA Board representatives was attorney James Vanek of Laner Muchin, Ltd., and attorney Greg Hosé, who represented the Union Board representatives.

The hearing convened on April 30, 2019, at approximately 8:10 a.m., at 1340 W. Washington Blvd., Chicago, Illinois. The Union's evidence consisted of the testimony of Scott Spangle, a Union Business Representative; Pawel Loboz, a former employee of Caldwell Plumbing; and Union Executive Board Member Tony Rottman. Caldwell was represented by co-owners Nick Tenerelli and Mike Tenerelli and its attorney Mr. Jason Loebach. The Union was represented by Grant Piechoinski and also presented Exhibits.

## I. UNION ALLEGATIONS

The Union alleges that Caldwell violated the following sections of the CBA: Section 4.9 regarding Pipe-Cutting; Section 6.1 regarding Wage Rates; Section 1.4 regarding Subcontracting; Section 6.5 regarding Wage Payment; and Sections 1.2 and 1.3 regarding the use of non-bargaining unit members to perform bargaining unit work.

2

## II.     EVIDENCE PRESENTED

The Union presented Mr. Rottman as a witness.  Mr. Rottman stated that he has been a member of the Union for 24 years, the Field Representative of the Local 130 Benefit Funds for 5 years, and a member of the Union's Executive Board for 7 years.  Mr. Rottman stated that Mr. Spangle provided information to the Union that Caldwell's employees were "banking hours," which is a practice whereby an employer utilizes hours worked for overtime and "banked" the overtime hours to offset a vacation day or other time off in the future without paying the overtime premium.  Mr. Rottman also stated that the Local 130 Benefit Funds audited Caldwell for the timeframe of July 1, 2015 through December 31, 2018, which revealed that Caldwell was improperly using an outside vendor to cut and thread or groove pipe to certain lengths in violation of the CBA and that Caldwell was improperly withholding $1.75 per paycheck of those employees who elected to receive their payment via direct deposit.  The Union presented approximately 50 invoices of cut and threaded or grooved pipe; Caldwell Plumbing time-sheets evidencing banked hours; direct deposited pay checks showing the $1.75 charge (4,615 paychecks); and non-members performing bargaining-unit work.

Mr. Loebach objected to the JAB hearing on procedural grounds because Caldwell was not afforded an opportunity to meet informally with the Union to resolve the dispute pursuant to Section 3.4 of the CBA.  The Union stated that informal, jobsite adjustment of the disputes was not possible given the 2015-2017 time period of the infractions, and pointed to the audit of the Local 130 Benefit Funds as sufficient notice of the dispute which dates back to 2017 and 2018.  Caldwell produced a copy of the audit report for each of the JAB members and introduced the audit into evidence.  The Board agreed that by proceeding with the hearing, Caldwell had consented to the jurisdiction of the Board and waived the opportunity for an informal meeting.

3

Issue #1- Utilizing a Non-Signatory Third Party to Cut and Groove Pipe

Mr. Rottman stated that approximately 70 Union members informed the Union's Executive Board that they installed pre-cut and grooved pipe. Many of these members also provided copies of their paychecks which revealed the $1.75 direct deposit charge, as well as tickets for orders from Porter Pipe & Supply Co. ("Porter Pipe"), the outside vendor that cut and grooved the pipe. The records of Porter Pipe, which were obtained as part of the pending lawsuit between Caldwell and the Local 130 Benefit Funds, reveal that there were 13 jobs for Caldwell Plumbing which equated to 3,919 man-hours of labor. Mr. Rottman stated that this hour estimate was determined by using estimating tables from three different signatory contractors with Local 130. All three tables which are used to calculate man-hours to cut and groove or thread pipe reached approximately the same number of hours. Mr. Rottman stated that Section 4.9 of the CBA covers pipe-cutting and that any pipe-cutting, threading, and/or grooving must be performed by covered employees pursuant to the CBA and that Section 1.4 prohibits subcontracting covered work to a person or entity that does not have a collective bargaining agreement with the Union. Mr. Rottman stated that once the pipe was cut, threaded and/or grooved, the pipe was installed by Caldwell. Mr. Rottman further stated that Porter Pipe does not have a CBA with the Union.

Caldwell admitted that it used Porter Pipe for pipe-cutting and grooving and stated that it was unaware that the CBA prohibited utilizing subcontractors for cutting and grooving pipe if they were not signatory to the CBA. Beginning in or about March 2018, Caldwell initially had some of its employees go to Porter Pipe to perform its pipe cutting. It has now purchased its own pipe cutting and grooving machine.

Issue #2 – Salary Reduction of the $1.75 Direct Deposit Fee

Mr. Rottman also stated that the CBA does not allow the deduction of fees related to direct deposits and $8,137.50 in $1.75 direct deposit fees were paid by employees over 4,615 pay periods. Caldwell submitted employee authorizations for the $1.75 charge and noted that the CBA is silent as to the imposition of the $1.75 fee. Caldwell stated that the $1.75 is a bank fee that was passed along to employees who authorized that it be taken from their pay checks for the convenience of direct deposit.

Issue #3 – Banking Hours to Avoid Overtime Payments

Mr. Rottman stated that pursuant to a notebook found by Union Business Agent Scott Spangle at a jobsite of Caldwell, the Union discovered $955.00 in unpaid overtime due to "banked hours" in March 2017. A notice dated April 6, 2017 was sent to Caldwell employees to come before the Union's Executive Board for a hearing on April 13, 2017 to discuss the banked hours issue. Caldwell asserted that this practice was not authorized and that the employees were promptly paid the overtime after being made aware of the issue. Mr. Spangle testified that he found the notebook containing the banked hours at the Carrington job site. Mr. Spangle also testified that Caldwell employees Dan Humphries and Ken Johnson told other employees, including John Taylor to bank hours and Mr. Spangle stated that the time sheets and the testimony of numerous Caldwell employees before the Union Executive Board confirmed that the practice occurred. Caldwell admitted that it had occurred and had issued a check shortly after it discovered that certain hours were banked.

Issue #4 – Utilizing Non-Covered Employees to Perform Covered Work

Mr. Rottman stated that the employees of Caldwell who came before the Executive Board stated that there were three individuals who were not bargaining-unit employees who were performing bargaining unit work. Mr. Spangle also testified that the time sheets at the

5

Carrington jobsite contained months of time performed by a non-covered laborer. Mr. Loboz testified that he is currently a Local 130 apprentice and previously worked for Caldwell from 2016 until he was fired for tardiness in June 2018. During a portion of the time he worked for Caldwell, Mr. Loboz was not a journeyman and was not enrolled in the Plumbers Local 130 apprentice program but he performed covered work during that period of time. Mr. Loboz became a Local 130 apprentice in or about May 2017. While working at Caldwell, Mr. Loboz saw Mr. Miroslav Jurcik and Charles Sanders performing covered work even though they were not members of the Union. Specifically with regard to Mr. Jurcik, Mr. Rottman testified that multiple Caldwell employees informed the Union Executive Board that Mr. Jurcik had performed trim work (installing fixtures and faucets in building interiors) which is work covered by the Union CBA.

Following the presentation of the evidence, the Board requested that Caldwell provide the Board the following information by May 10, 2019:

1. Evidence of the amount of the direct deposit fees of the bank and that such fees were paid to the bank,

2. Time sheets for individuals who performed work at Porter Pipe, and

3. Proof of the date that Caldwell paid the overtime to the covered employees for the improperly banked hours.

### III.  FINDINGS AND CONCLUSIONS

After deliberations following the hearing, the Board voted unanimously in finding that Caldwell violated the CBA as follows:

1. The Board found that Article VI, Section 6.5, was violated because the $1.75 fee withheld from employee checks to offset Caldwell's bank's direct deposit fee is not explicitly allowed under the CBA.

2. The Board found that Article IV, Section 4.9 and Article I, Section 1.4 were violated because Caldwell failed to use covered employees on at least 13 different

6

jobs to cut, thread, and groove the pipe that was cut, threaded and grooved by Porter Pipe which is not a signatory subcontractor with the Union.

3. The Board found that Article V, Section 5.2 was violated because Caldwell failed to pay overtime pay in a timely manner due to the improper banking of hours.

4. The Board found that Article I, Sections 1.2 and 1.3 was violated because three non-licensed, non-Union members were performing bargaining unit work. The finding related to Mr. Jurcik is limited to the finding that he had performed trim work covered by the Union CBA.

The Board also found that Caldwell admitted to each of the above violations during its presentation. After considering all of the evidence presented, and based upon the Findings and Conclusions described above regarding the Charges, the Board enters the following Award, by a unanimous vote, pursuant to the powers granted to it by Article III, Section 3.6, of the CBA:

1. For withholding the $1.75 direct deposit fee, the Board assesses a fine of $8,137.50 in restitution to be paid to the covered employees who were assessed the fee. Caldwell must provide written proof from the bank that the direct deposit fee equals $1.75, otherwise, if Caldwell charged a higher amount, the fine would be doubled.[1]

2. For the violation of banking hours and not paying overtime, the Board assesses a fine of $1,500 per covered member for a total of $9,000 for six covered members. An additional assessment of $10,000 will be assessed against Caldwell since Caldwell did not pay the wages owed to the covered employees for the banked hours by April 8, 2017.[2]

3. For the violation of not using covered employees to cut and groove their own pipe and inappropriately using Porter Pipe, the Board assesses a fine of $189,457.48 in lost wages.[3] Such wages were calculated at the CBA wage rate applicable at the time of each invoice from Porter Pipe and limited to the 3,919 hours of labor lost for the period of July 1, 2015 through December 31, 2017. An additional $50,000 will be assessed if Caldwell is found in any violation of the CBA in future years.

4. For the violation of using employees who were not covered by the CBA, instead of covered employees to perform covered work, the Board assesses a total fine of $70,596.25 comprised of Mr. Loboz ($45,596.25), Mr. Jurcik ($5,000) and Mr.

---

[1] Subsequent to the hearing, Caldwell provided verification of the bank fee for the direct deposit fee of $1.75.

[2] Subsequent to the hearing, Caldwell provided verification of repayment of the banked hours for impacted employees on the pay date of April 14, 2017.

[3] Subsequent to the hearing, Caldwell provided invoices from Porter Pipe along with timesheets of Caldwell employees which allegedly evidenced that Caldwell employees cut the pipe at Porter Pipe beginning in March 2018.

Sanders ($20,000). An additional $25,000 will be assessed if Mr. Charles Sanders performs any covered work in the future.

The total amount of all fines assessed under this Decision equals $287,191.23, which includes $5,000 to the PCA Industry Fund related to the costs incurred by the PCA for this hearing and decision. Caldwell must pay the above award within thirty (30) days of the date of this Decision. The bank fees will be reimbursed to the impacted employees. The balance shall be paid to the Union except $5,000 is to be paid to the PCA Industry Fund as set forth above.

This Decision & Award issued on *May 16, 2019* is final and binding on all parties. The Board directed that a copy of this Decision and Award be mailed to Caldwell and to the Union, and to the Union's attorney, via first class certified mail, return receipts requested.

8

# JOINT ARBITRATION BOARD

*Signature Page*

**EMPLOYER**                                        **UNION**

Sign below: Michael Kerrigan

Sign below: Kenneth Turnquist

Sign below: Todd DeFranco

Sign below: Patrick McCarthy

Sign below: John Baethke

Sign below: William Matthies

Sign below: ~~Dick Browning~~

Sign below: Joseph Strong

Sign below: MATT Erickson

Sign below:

DATED: April 30, 2019

# Exhibit 2



Office of the Secretary of State

# Business Entity Search

## Entity Information

| | | | |
|---|---|---|---|
| **Entity Name** | CALDWELL PLUMBING CO. | | |
| **File Number** | 55057362 | **Status** | ACTIVE |
| **Entity Type** | CORPORATION | **Type of Corp** | DOMESTIC BCA |
| **Incorporation Date (Domestic)** | 04-25-1988 | **State** | ILLINOIS |
| **Duration Date** | PERPETUAL | | |
| **Annual Report Filing Date** | 04-02-2024 | **Annual Report Year** | 2024 |
| **Agent Information** | NICK TENERELLI 821 CHILDS ST WHEATON ,IL 60187 | **Agent Change Date** | 04-24-2015 |

## Services and More Information

Choose a tab below to view services available to this business and more information about this business.

| Officer | Name and Address |
|---|---|
| President | SANDRA TENERELLI 821 CHILDS STWHEATON IL 60187 |
| Secretary | NICK TENERELLI 821 CHILDS STWHEATON IL 60187 |